UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TITO DAVID VALDEZ, JR., | No. C 05-4443 SI (pr) |
| Plaintiff, | **ORDER DENYING MOTION FOR INJUNCTIVE RELIEF** |
| v. | |
| JEANNE WOODFORD; et al., | |
| Defendants. / | |

## INTRODUCTION

This action concerns a prison regulation that restricts prisoners who committed sex offenses against children from visiting with children. The court found cognizable Tito Valdez's claim that California's prison regulations regarding visitation violated his right to equal protection of the laws. The action is now before the court for consideration of Valdez's motion for a temporary restraining order and preliminary injunction to enjoin defendants and their agents "to provide Plaintiff and all affected inmates, with 'contact visits' with any minors, unless the minor was the minor victim." Motion For Preliminary Injunction And Temporary Restraining Order, p. 3. (Docket # 39.) Defendants have opposed the motion. For the reasons discussed below, the motion will be denied.

**BACKGROUND**

Valdez was convicted in 1994 of one count of forcible rape, one count of committing a lewd act with a child under 14 by force, and one count of committing a lewd act with a child under 14 years. See Cal. Penal Code §§ 261, 288(B), 288(A). His victim was a thirteen-year old girl. In a separate trial in 1995, Valdez was convicted of conspiracy to commit a crime and solicitation of the murder of that girl. See Cal. Penal Code §§ 182(a)(1), 653f(b). He is currently in custody serving a sentence of 25 years to life in prison for the solicitation of murder conviction, which he states was consecutive to a 10-year term for the sex offenses.

Due to his sex offenses, a prison regulation limits Valdez's visits with minors. The current version of the applicable regulation provides in part: "For inmates convicted of PC Section(s) 261, . . . [or] 288 . . . when the victim is a minor, visitation with any minor who is not the victim of the crime shall be limited to non-contact status." See 15 Cal. Code Regs. § 3173.1(b). This current version of the regulation became operative in December 2005. The claims in the complaint, however, concern the former version of the regulation in place in 2003, 2004 and until December 2005 that had the odd effect of completely banning visits between a sex offender and a minor who was not the victim of his crime while allowing visits between a sex offender and a minor who was his victim.[1] The current version of § 3173.1 appears to have ended this counter-intuitive distinction in former § 3173.1. The former version of § 3173.1 also restricted prisoners who committed sex offenses against children more than other prisoners

---

[1] The former version of § 3173.1 did not explicitly state this difference in treatment. Rather, the difference in treatment resulted from the interplay of the regulation with statutes. The regulation provided that "visiting with minors shall be prohibited for any inmate sentenced to prison for [any of several listed sex offenses] unless specifically authorized by a Juvenile Court, pursuant to Welfare and Institutions Code section 362.6." 15 Cal. Code Regs. § 3173.1 (former version, in effect in 2003-2005). Welfare and Institutions Code § 362.6 allowed a juvenile court to hold a hearing to determine whether "visitation between the child victim and the incarcerated person would be in the best interests of the child victim." If visitation with an inmate was determined to be in the best interests of the child victim, the CDC would be notified, and the juvenile court could "impose whatever safeguards or restrictions it deems appropriate to protect the child victim." Cal. Welf. & Inst. Code § 362.6. Section 362.6 allowed a hearing to be requested pursuant to California Penal Code § 1202.05 but not otherwise. Penal Code § 1202.05 banned all visits between the sex offender and the minor-victim but allowed family members to request a hearing if he/she objected to the ban on visitation between the minor-victim and the convict.

2

insofar as they wanted to visit with children. The current version of § 3173.1 did not eliminate that difference in treatment. Both the former and current version of § 3173.1 did not apply to all sex offenders, but only to those who have committed sex offenses against minors. The current version of § 3173.1 also applies to prisoners who have committed certain other crimes against minors (e.g., murder, assault, and infliction of corporal injury). See 15 Cal. Code Regs. § 3173.1.

Valdez wants contact visits with his new family, including his step-children. He met his wife a few years ago while he was in prison and married her in February 2004. On August 17, 2003, a correctional sergeant interrupted and terminated Valdez's visit with his then-fiancée, her 8-year old daughter and her 13-year old son. The termination was due to the sergeant's discovery of a CDC 128-B chrono dated July 16, 2003 which documented the § 3173.1 bar to Valdez's family visits with minors. Until August 17, 2003, Valdez had been able to visit with the children.

There is now in place a state court order allowing non-contact visits for prisoners covered by § 3173.1. Plaintiff's Request For Judicial Notice, Exh. G (In re. Reyes, Del Norte County Superior Court Case No. HCPB04-5166, Sept. 7, 2005 Ruling And Order On Petition For Writ Of Habeas Corpus, p. 2 ("It is Ordered that, subject to all other valid Regulations, inmates covered by Regulation 3173.1 shall be allowed non-contact visits with minors")).

## DISCUSSION

A. Standards For Injunctive Relief

The court has the authority to grant a preliminary injunction in the exercise of its equitable powers. See Fed. R. Civ. P. 65. As the court is acting in equity, the decision to enter a preliminary injunction is largely left to its discretion. See Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist., 868 F.2d 1085, 1087 (9th Cir.1989). Traditionally, this rule has been interpreted to require the trial court to consider the likelihood that plaintiff will prevail on the merits and the possible harm to the parties from granting or denying the injunctive relief. See Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir.1987). At the extremes, the

party seeking injunctive relief must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. See Big Country Foods, 868 F.2d at 1088; Miss World (UK) Ltd. v. Mrs. America Pageants, Inc., 856 F.2d 1445, 1448 (9th Cir.1988); Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir.1987). "These are not two distinct tests, but rather the opposite ends of a single 'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.'" Miss World, 856 F.2d at 1448 (quoting Rodeo Collection, 812 F.2d at 1217). However, in any situation, the court must find that there is some threat of an immediate irreparable injury, even if that injury is not of great magnitude. See Big Country Foods, 868 F.2d at 1088 (citing cases).

B.  Analysis

    1.  Merits Of The Complaint

When the court reviewed Valdez's complaint, it found cognizable only an equal protection claim and dismissed his due process and ex post facto claims. The equal protection claim appears to have two aspects, i.e., that the regulation violated equal protection because (a) it impermissibly impeded the allegedly fundamental right to associate with the family by treating prisoners who committed sex offenses against minors differently from other prisoners and (b) it drew an irrational distinction among those sex offenders in that it allowed prisoners to visit their minor-victims but not to visit minors who were not their victims.

Although defendants discussed the regulation in general, they did not discuss the reason for the difference in treatment between prisoners who have committed sex crimes against children who want to visit their minor-victims and those who want to visit minors who were not their victims. This court's analysis of the merits of the equal protection claim in the complaint is further hindered by the fact that the defendants base their analysis on the merits of the current § 3173.1 rather than former version that is the subject of Valdez's complaint. Notwithstanding these analytic problems, the court can consider the likelihood of success of the complaint and finds only a modest likelihood of success on one claim.

4

The challenge to the policy insofar as it interferes with the sex offenders' alleged fundamental right to associate with the family does not appear strong as the regulation likely will pass muster under Overton v. Bazzetta, 539 U. S. at 131-32, and Turner v. Safley, 482 U.S. 78, 89 (1987), In Overton, the Court applied the Turner test and rejected a First Amendment challenge to a policy that limited prisoners' visits with children.[2]

As to the part of Valdez's complaint that concerns the allegedly irrational distinction between sex offenders who want to visit with minor-victims and those who want to visit with minors who weren't victims, the likelihood of success appears modest. Notwithstanding the parties' failure to explore the reason for the difference in treatment, the statutory and regulatory scheme suggest that visits with minor-victims are based on a policy of family reunification and that visits with the minor-victim are allowed only when the juvenile court determines it is in the best interest of the child. See fn. 1, supra. The prisoners may feel the effect of that policy but are not the primary concern motivating the policy. Additionally, because the current version of the regulation no longer continues the alleged irrational distinction, the scope of relief ultimately available would not include an injunction against a superseded regulation even if it had violated a constitutional right.

Defendants make a couple of flawed arguments in support of their position that the complaint is not meritorious. First, they argue that they will likely prevail on their qualified immunity defense. However, even if they prevail on that defense, only part of the action against them will be affected. Qualified immunity would not shield any defendant from a claim against

---

[2]In Overton, the Court recognized particular problems presented by child visitors, including their need for greater supervision and found that policy limiting child visits bore a rational relation to the prison's "valid interests in maintaining internal security and protecting child visitors from exposure to sexual or other misconduct or from accidental injury." Id. at 133. The policy thus passed muster under the first Turner factor. The Court also found that the second Turner factor was satisfied because inmates had alternative means of associating with those prohibited from visiting in that they could communicate by telephone and letter and by sending messages through persons who were allowed to visit -- noting specifically that "[a]lternatives to visitation need not be ideal, however; they need only be available" -- id. at 135, that the third Turner factor was satisfied because accommodating the asserted constitutional right would have caused a strain on the prison's financial resources and impaired security at the prison, id., and that the fourth Turner factor was satisfied because the prisoner had not pointed to some obvious regulatory alternative that fully accommodated the asserted right "while not imposing more than a de minimis cost to the valid penological goal," id. at 136.

him in his official capacity, and the complaint (at p. 10) states that all of the defendants have been sued in their individual as well as in their official capacities.  See Brandon v. Holt, 469 U.S. 464, 472-73 (1985). Qualified immunity also only applies to damages claims and not to the injunctive relief or declaratory relief requests in the complaint (at pp. 61-62).  See American Fire, Theft & Collision Managers, Inc. v. Gillespie, 932 F.2d 816, 818 (9th Cir. 1991).   Second, defendants argue that Valdez's action faces the obstacle of 42 U.S.C. § 1997e(e) because he has not suffered a physical injury in addition to his alleged mental distress. Once again, even if defendants prevail on that defense, only part of the action against them will be affected.  If Valdez could not establish a physical injury resulting from the policy challenged -- an issue this court need not decide today -- § 1997e(e) would not compel rejection of his entire action. Section 1997e(e) has been construed very narrowly by the various appellate courts and has been found not to preclude a plaintiff from recovering nominal and punitive damages for the violation of constitutional right and not to preclude a plaintiff from obtaining injunctive and declaratory relief.  See Oliver v. Keller, 289 F.3d 623, 627-30 (9th Cir. 2002); Davis v. District of Columbia, 158 F.3d 1342, 1346 (D.C. Cir. 1998).

### 2. Harm And Hardships

The other area of focus in considering whether to grant injunctive relief is the harm that Valdez will suffer without the requested relief and harm to defendants if it is granted.

On one side of the scale is the harm to Valdez if the requested injunction is not granted. Valdez has not shown irreparable harm will occur because several means of communication remain open to Valdez if he is not allowed contact visits:  he may have non-contact visits with his children, he may communicate with them through correspondence and telephone calls, and he may communicate with them through other persons who are allowed to visit. Although Valdez finds fault with those alternatives, the alternatives need not be as good as contact visits as long as they are available.  See Overton, 539 U.S. at 135 (with regard to prisoners' argument that telephone calls are expensive and letters don't help illiterate prisoners, the court explained that "[a]lternatives to visitation need not be ideal, however; they need only be available.")  Valdez's

1 arguments that his marriage is deteriorating and these alternatives are not sufficient to prevent that
2 are, as defendants point out, too speculative to support an injunction.  The existence of these
3 alternatives convinces the court that Valdez will not sustain irreparable harm if the court does not
4 issue the injunction.

5       Valdez urges that he will be in danger if he is identified as a sex offender, which he
6 contends will occur if his visits with minors are non-contact visits.  He has not provided sufficient
7 evidence that non-contact visits are an inevitable marker of sex offender status.  Non-contact
8 visits exist for several reasons in addition to sex offender status.  The regulations provide, for
9 example, that prisoners in reception center processing are limited to non-contact visits, see 15
10 Cal. Code Regs. § 3170.1(e), as are prisoners in administrative segregation and security housing
11 units, see id. at § 3170.1(f), as may be prisoners who have pending serious disciplinary charges
12 for drugs, contraband or visitation rules violations, see id. at § 3176.4(a), and as are prisoners who
13 have murdered children, abused children, assaulted children, or inflicted corporal injury on
14 children, see id. § 3173.1(d) (as amended).  The fact that an inmate is observed having a non-
15 contact visit thus does not automatically identify him as a sex offender.  Valdez's argument about
16 the danger of being identified as a sex offender also is undermined by the fact that his family is
17 publicizing his situation.  A newspaper article that discussed the limits on sex offenders' visits
18 with minors prominently featured Valdez, his sex offenses, and his new family so that anyone
19 who read that article would know that Valdez was a sex offender regardless of how his family
20 visits were handled.  See Complaint, Exh. E.  Finally, even if non-contact visits could not take
21 place, there remain the other previously mentioned alternatives of letter-writing, telephone calls,
22 and messages through other visitors

23       On the other side of the hardship scale are the prison officials' need to protect children
24 from harm and allocation of scarce resources that would be impacted by the increased cost of
25 supervising the visiting area where children are in physical contact with prisoners known to have
26 committed sex crimes against children.  Valdez urges that defendants have presented no evidence
27 that he has any propensity for violence against minors or that he has done anything wrong to
28 minors during contact visits.  As to the former point, his conviction for raping a 13 year-old and

7

1  soliciting her murder suggest otherwise; as to the latter point, the defendants do not have to wait
2  until a prisoner harms someone to apply regulations intended for security purposes. The risk to
3  minor-visitors that misconduct may be committed against them by sex offenders may be small,
4  but the harm would be irreparable. Protection of the minor visitors is a legitimate goal of prison
5  officials. See Overton, 539 U.S. at 133.

6  Another factor counseling against an injunction is that the court has no sense of what the
7  visiting areas and visiting sessions are like at CTF-Soledad. The little information that is in the
8  record suggests a busy and occasionally disorderly environment. See Complaint, Exh. AA
9  (newspaper article stating: "Visiting rooms are packed, chaotic and loud. . . . Visiting days cost
10 money because more guards are required to oversee the process and prevent illegal drugs from
11 getting inside"); Plaintiff's Request For Judicial Notice (docket # 50), Exh. Y (prison memoranda
12 concerning visiting room incident in which Valdez's wife poured a can of soda on him during a
13 spat). The visiting area environment is relevant to consideration of the staffing concerns
14 regarding supervision of contact visits between sex offenders and minors.[3]

## C. Plaintiff's Current Visitations

The current version of § 3173.1 does not bar all visits and instead merely limits the visits to non-contact visits. A state court order is in place requiring compliance with § 3173.1. Valdez did provide evidence in his reply brief that suggests he currently is not being allowed visits with children based on safety concerns. See Reply Exh. 3 (Valdez Decl., pp. 5-6). Assuming that such a decision was made, it appears to be separate from the requirements under former or current §

---

[3] The court expects that, by the summary judgment stage, a much more extensive presentation of evidence will be made to support all parts of the parties Turner analyses. As to the visiting area, evidence should be provided about, for example, the number of prisoners and visitors allowed in the visiting area during a visiting session, whether everyone stays seated, whether visitor and/or inmate movements during a visit are allowed, how the area is monitored by staff, the number of staff persons monitoring the visiting area, and the normal visitation schedule in place at the prison. Defendants also should consider presenting evidence on the frequency of rule violations during visits and evidence of any improprieties with children during visits with sex offenders or other prisoners.

8

3173.1. Even if the staff member disallowed a visit for safety concerns, there is no evidence that this was done pursuant to the policy that is the subject of the complaint and for which defendants can be held responsible.

To be certain that the amended version of § 3173.1 is being followed, the court will require defendants to obtain and submit a declaration explaining whether Valdez is currently permitted to have non-contact visits with minors and, if he is not allowed such visits, explain why not. Defendants also must submit a copy of any CDC-128 or other document in Valdez's central file that states whether he currently is allowed to have minor visitors. The declaration may be from any of the defendants or from the correctional staff person who has supervisory authority over prisoner visits at CTF-Soledad. It is the court's intent that – if the declaration states that plaintiff is permitted to have non-contact visits – plaintiff will be able to show that declaration to any correctional staff person and thereby obtain the visits.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for a temporary restraining order and preliminary injunction is DENIED. (Docket # 39, # 55.) Defendants must file and serve a copy of the declaration discussed in Section C above on or before **September 29, 2006**.

The court earlier had vacated the briefing schedule on dispositive motions pending a resolution of the motion for a preliminary injunction and temporary restraining order. In order to move this case toward resolution, the court now sets the following new briefing schedule for dispositive motions:

1. Defendants must file and serve a dispositive motion no later than **November 3, 2006**. If defendants are of the opinion that the case cannot be resolved by dispositive motion, they must file and serve such a notice by the deadline.

2. Plaintiff must file and serve his opposition to the dispositive motion no later than **December 1, 2006**.

/ / /

/ / /

9

United States District Court

For the Northern District of California

1        3.     If defendants wish to file a reply brief, they must file and serve their reply brief no later than **December 15, 2006**.

      IT IS SO ORDERED.

Dated:  August 30, 2006

                                               SUSAN ILLSTON
                                      United States District Judge