UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TITO DAVID VALDEZ,

    Plaintiff,

v.

JEANNE WOODFORD; et al.,

    Defendants.

No. C 05-4443 SI (pr)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Tito David Valdez, a California prisoner, filed this pro se civil rights action under 42 U.S.C. § 1983 alleging that his right to equal protection of the laws had been denied by a regulation that restricted his visitation with children due to his sex offense convictions. Defendants now move for summary judgment, as does plaintiff. For the reasons discussed below, defendants' motion for summary judgment will be granted and plaintiff's cross-motion for summary judgment will be denied. Judgment will be entered in defendants' favor.

## BACKGROUND

The following facts are undisputed unless otherwise noted.

The complaint concerns a state prison regulation in place from March 2003 through December 2005. At the time, Valdez was housed at the Correctional Training Facility in Soledad ("CTF"). Defendant Woodford served as the Director, Undersecretary or Acting Secretary of the California Department of Corrections and Rehabilitation ("CDCR") from February 19, 2004 through July 6, 2006. Defendant Kane was the warden at CTF from May

2004 through July 14, 2006. Defendant Burleson reviewed Valdez's administrative appeal concerning the visitation restrictions at the Director's level. Defendant Levangie was the Assistant Chief, Regulation and Policy Management Branch, Policy and Evaluation Division of CDCR from 2002 until October 30, 2003.

A.    Valdez's Situation

Valdez was convicted in 1994 of one count of forcible rape, one count of committing a lewd act with a child under 14 by force, and one count of committing a lewd act with a child under 14 years. See Cal. Penal Code §§ 261, 288(B), 288(A). His victim was a thirteen-year old girl. In a separate trial in 1995, Valdez was convicted of conspiracy to commit a crime and solicitation of the murder of that girl. See Cal. Penal Code §§ 182(a)(1), 653f(b). He is now serving a sentence of 25 years to life in prison for the solicitation of murder conviction, which he states was consecutive to a 10-year term for the sex offenses.

Due to his sex offenses, state regulations limited Valdez's visits with minors. The current version of the regulation provides that inmates who have been convicted of certain listed sex offenses against minors may visit with any minor who is not the victim of the crime on a non-contact basis. See 15 Cal. Code Regs. § 3173.1(b). The claims in the complaint, however, concern the former version of the regulation in place in 2003, 2004 and until December 2005. Under the former version of § 3173.1, not even non-contact visits were permitted and Valdez was completely banned from visiting minors.

Valdez wants contact visits with his new family, including his step-children. He met his wife a few years ago while he was in prison and married her in February 2004. On August 17, 2003, a correctional sergeant interrupted and terminated Valdez's visit with his then-fiancée, her 8-year old daughter and her 13-year old son. The termination was due to the sergeant's discovery of a CDC 128-B chrono dated July 16, 2003 which documented the § 3173.1 bar to Valdez's family visits with minors. Until August 17, 2003, Valdez had been able to visit with the children. His visiting status was restored to permit non-contact visits with minors on September 30, 2006. Valdez has physical ailments he attributes to denial of visitation with

2

1  minors.

B.     The Visiting Room

Visiting is permitted at CTF on Saturdays and Sundays from 8:00 a.m. - 3:00 p.m. Valdez Decl., ¶ 25 (docket # 94). The visiting room has a capacity of 203 people. It is a "cafeteria-style room[] where inmates and all visitors, including minor visitors, may freely mingle. Vending machines are located against a wall. Inmates and visitors alike wait in line in front of the machines." McGowan Decl., ¶ 4; Plaintiff's Notice of Motion, Motion Opposing Summary Judgment (hereinafter "Plaintiff's Opposition Brief"), p. 4. Additionally, visitors may have photos taken with inmates for a fee by an inmate worker who takes the pictures at the back wall near the inmate entrance. "[T]ables are set up with chairs on opposite sides. Visitors must sit opposite to the inmate they are visiting, with the table between them. The chairs link together, preventing anyone from moving them closer together." McGowan Decl., ¶ 7. The parties disagree as to whether the room is chaotic: defendants presented evidence that it is chaotic and Valdez denies that characterization. It is, however, undisputed, that both inmates and visitors are free to mingle and walk around. The parties' submissions indicate that the room is at least a busy place.

There is an elevated platform in the visiting room, from which guards may observe the activities in the room. Valdez's estimates of the number of correctional officers assigned to the visiting room vary from 5 to 7. He states that 2-3 "correctional officers are assigned to an elevated platform, sitting down or standing." Valdez Decl. (docket # 94), ¶ 2. They sometimes circulate around the room "to observe activity, terminate visits, or respond to a visitors [sic] complaint." Id. Another correctional officer is permanently assigned to a desk at the entrance to the visiting room and performs various administrative tasks related to processing visitors. Id. at ¶ 3. That correctional officer at the desk may observe visiting activity and report to officers on the platform any suspicious activity or inappropriate touching, but he does not leave his post absent an emergency. There are 8 video cameras to monitor the visiting area. Id. at ¶¶ 25-31.

The parties agree that inappropriate touching of adult visitors by inmates occurred in the visiting room. There is no evidence that this was assaultive touching, but instead appeared to be touching prohibited by prison rules because of the prison setting.

4

Not all contact with minors was precluded because a sex offender could obtain access to children in the room if the sex offender was having a permissible contact visit with an adult at the same time children were present visiting another inmate. Valdez at least once sat next to children while visiting with an adult after the policy was implemented. See id. at ¶ 41. Valdez states that visiting room guards were not informed which inmates were affected by § 3173.1 when they were visiting adults.

Non-contact visits take place in the back of the visiting room. In the non-contact visiting area, inmates and visitors are separated by a glass partition and speak to each other on a telephone.

A state court ordered prison officials to allow non-contact visits for prisoners covered by § 3173.1 on September 7, 2005. Plaintiff's Request For Judicial Notice (docket # 85), Exh. X.[1] That order did not state that a federal equal protection violation was found by that court.

---

[1] Much of plaintiff's evidence was submitted as attachments to his various requests for judicial notice. The court takes judicial notice of the existence of the regulations but denies the requests for judicial notice of other documents because plaintiff has not shown that any of the exhibits attached to his requests are judicially noticeable. See Fed. R. Evid. 201(b). The existence and contents of miscellaneous prison records, letters and plaintiff's writings cannot be noticed. The court considers the evidence attached to the requests for judicial notice as though that evidence was attached to a declaration and properly authenticated because the evidence was submitted by a pro se litigant who does not appear to understand the very limited scope of things that can be judicially noticed and because the authenticity of the documents doesn't appear to be contested at this stage in the litigation.

Although the court has considered all of Valdez's voluminous filings, and hasn't rejected any exhibit based on the fact that it came in attached to a request for judicial notice, the court points out three particular areas Valdez emphasizes but are actually irrelevant to the questions presented in this case. First, Valdez's evidence that fellow rapist Robert R. was allowed to visit with non-victim minors is irrelevant because the complaint concerns the validity of the regulation and Valdez has provided no proof that the regulation caused the difference in treatment between him and Robert R. and because Robert R.'s experience occurred after § 3173.1 was amended. Second, Valdez's temporary placement on non-contact visits with his wife (following the incident where she poured soda on him during a spat) is irrelevant to the question of the validity of former § 3173.1. Finally, Valdez's arguments concerning the activities in a state court action he filed do not aid the analysis here. To the extent he contends there was a misrepresentation in state court by the Deputy Attorney General, his recourse is to pursue the matter in state court rather than in this challenge to former § 3173.1.

**VENUE AND JURISDICTION**

Venue is proper in the Northern District of California because the events or omissions giving rise to the claims occurred at CTF in Monterey County, which is located within the Northern District. See 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When there are cross-motions pending, the court looks at all the evidence submitted in support of, and in opposition to, both motions in ruling on each motion. See Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001).

Generally, when a party challenges the merits of the opponent's claim, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See

Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). The complaint is considered in deciding the pending motions because it is made under penalty of perjury.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631.

**DISCUSSION**

A.   Former Section 3173.1

The version of § 3173.1 from March 20, 2003 through December 5, 2005 ("former § 3173.1") provided: "Visiting With Minors shall be prohibited for any inmate sentenced to prison for violating Penal Code sections(s) 261, 264.1, 266c, 273d, 285, 286, 288, 288a, 288.5, or 289 unless specifically authorized by a Juvenile Court, pursuant to Welfare and Institutions Code section 362.6." The victim did not have to be a minor for the sex offender to be covered by the regulation. For ease of reference, the court refers to inmates covered by former § 3173.1 as sex offenders, and that is certainly the largest category of affected inmates, but the regulation did also bar visits with minors for inmates convicted of corporal punishment or injury of a child, see Cal. Penal Code § 273d.

The questions here are whether former § 3173.1 violated Valdez's right to equal protection by impermissibly differentiating (1) between sex offenders and other prisoners and (2) between sex offenders who want to visit their minor-victims and sex offenders who want to visit minors they had not victimized.

7

B.     Applying Turner To Former § 3173.1

Strict scrutiny is inappropriate to test the infringement of prisoners' constitutional rights. Turner v. Safley, 482 U.S. 78 (1987); see Johnson v. California, 543 U.S. 499, 530-31 (2005) (noting exception to Turner for race-based classifications). In Turner, the Court reiterated the need for judicial deference to the problems of prison administration and identified the appropriate standard for judicial review of a regulation: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. The burden "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." Overton v. Bazzetta, 539 U.S. 126, 132 (2003). Turner identified four factors to guide the determination whether the regulation is reasonably related to a legitimate penological interest. The court now tests former § 3173.1 using those factors.

1.     Valid, Rational Connection

The first factor to consider is whether there is a "'valid, rational connection' between the prison regulation and the legitimate government interest put forward to justify it." Turner, 482 U.S. at 89. A regulation cannot be sustained where the "logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." Id. at 89-90.

Defendants assert that the regulation restricting visits with minors was done to protect children. They point to a letter in which Colleen Levangie (an employee in the CDCR's policy and evaluation division) wrote on June 10, 2003, discussing the new regulation: "The intent of the Department in adopting this rule is to prevent harm, abuse, or exploitation of minors by inmates. So, in addition to continuing to restrict visits with the child victims of certain crimes as required by current law, under the broadened authority of this new rule, the Department will screen inmates to determine whether minor visits are appropriate and if so, whether they should occur under contact or non-contact circumstances." Complaint, Exh. Y, p. 1. The latter part of that sentence meant that, in addition to sex offenders, other inmates apparently could be

restricted in visiting with minors. See id.; see also former § 3173.1, current § 3173.1(e), (f). An "Initial Statement of Reasons" for the proposed 2005 changes to § 3173.1 also refers to the safety of minor visitors as a motivation for the regulation as it then existed and as it was proposed to be amended. See Def. Request For Judicial Notice (docket # 46), Exh. D (proposed amendment "will retain some appropriate flexibility to individual institutions, facilities, and their visitors, while at the same time, insure the safety of all persons including visiting minors and the legitimate penological interests of maintaining the safety and security of the institutions.") A state superior court considering the regulation noted that "the goal of Regulation 3173.1 is to prevent molestation of children in prison visiting rooms." See Plaintiff's Request For Judicial Notice (docket # 85), Exh. X. Although their evidence was not extensive – perhaps due to their perception that the purpose of the regulation is obvious[2] – defendants sufficiently articulated that protection of children was the reason for the restriction of visits in former § 3173.1 to permit meaningful judicial review. See Armstrong v. Davis, 275 F.3d 849, 874 (9th Cir. 2001).

    The protection of children is an interest that may be put forth under Turner to justify a prison regulation. See Overton, 539 U.S. at 131-32; see generally Pell v. Procunier, 417 U.S. 817, 822-23 (1974) (identifying central penological objectives as deterrence (by making incarceration undesirable), protection of public (by quarantining criminal offenders),

---

[2] That sex offenders present a particularly significant problem of committing further sex offenses has been articulated repeatedly by the courts. See, e.g., McKune v. Lile, 536 U.S. 24, 33, 34 (2002) (risk of sex-offender recidivism is "frightening and high"; "[w]hen sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault"); United States v. Garner, No. 06-10417, slip op. 7209, 7216 (9th Cir. June 18, 2007) ("the particularly high danger of recidivism of sex offenders is well-known and has been used to support various other laws, such as sex-offender registration requirements"); Glauner v. Miller, 184 F.3d 1053, 1054 (9th Cir. 1999) (state legislature did not lack rational basis for requiring more scrutiny of sex offenders in parole than other classes of criminal offenders due to heightened recidivism concerns). California's response to this high likelihood of return to sexually assaultive conduct most notably includes the requirement that sex offenders register. See Cal. Penal Code § 290. California also has enacted laws seeking to keep sex offenders away from children. See e.g., Cal. Penal Code § 3003.5(b) (prohibiting registered sex offenders from residing within 2000 feet "of any public or private school, or park where children regularly gather"); § 3003.5(c) (allowing municipalities to further restrict residency of registered sex offenders); § 626.81 (registered sex offenders generally not allowed on school grounds), § 653b (registered sex offenders not allowed to loiter about schools or public places or near which children attend or normally congregate). The regulation at issue here similarly tries to preclude further sex offenses by keeping sex offenders away from children.

rehabilitation, and internal security). In Overton, the Supreme Court applied the Turner test and rejected a First Amendment challenge to a policy that limited prisoners' visits with children. The Court recognized particular problems presented by child visitors, including their need for greater supervision and found that policy limiting child visits bore a rational relation to the prison's "valid interests in maintaining internal security and protecting child visitors from exposure to sexual or other misconduct or from accidental injury." Id. at 133.

Valdez does not dispute that "the intent of former section 3173.1 was to prevent abuse, or exploitation of minors by inmates," but argues that there is no rational connection between the regulation and the protection of children. Plaintiff's Reply (docket # 93), p. 6. First, he contends that the regulation did not further the safety of minor visitors because minors were still exposed to inmates subject to former § 3173.1 when the sex offenders were engaged in permissible contact visits with adults. This, however, is just an argument that the protection of minors was not complete and does not show that the regulation did not limit at least some opportunities for harm to minors.

Valdez also argues that the exception in former § 3173.1 that allowed inmates to visit their minor-victims contradicted the purpose of preventing abuse and protecting minors and that there was no reason why that exception's policy of family reunification should not extend to inmates who want to visit children they have not victimized. This argument fails for the reasons explained in section "C" later in this order. The basic problem with this argument is that there is a process in Juvenile Court that provides greater protection for minor-victims and that process is not available to protect minors who have not been victimized by the inmate.

Valdez also argues that the CDCR's other rules "fully address" the security concerns of protecting minors by requiring parental supervision or minor visitors. Id. at 10. He provides no evidence to support his presumption that parental supervision eliminates the possibility of an inmate harming a child. And the undisputed evidence is that visitors and inmates are not required to stay put – they can and do get up and walk around and that sexual misconduct occurs in the visiting room. Although it is true that defendants present no evidence of sexual misconduct against minors in the visiting room by an affected § 3173.1, prison officials did not

have to wait for a victim to take steps to avoid the problem.

On the undisputed evidence, the prison staff cannot watch every inmate all the time during visiting hours. There were not more than 7 guards to watch over a room that held 203 people. Even if all the guards were watching those present in the room (rather than performing other administrative tasks, such as processing inmates and visitors and documenting misconduct), the ratio of guards to inmates and visitors would have been 1:29. The guards could not subject any one prisoner to uninterrupted monitoring without ignoring other inmates and visitors. The correctional staff, in addition to watching for sexual misconduct, also watched for contraband passing between inmates and visitors. It cannot be said that the rule denying sex offenders close physical contact with children in the busy environs of a prison visiting room was an arbitrary or irrational rule.

Valdez does "not present enough evidence to refute a common-sense connection between [former § 3173.1] and the objective that government's counsel argues the policy was designed to further," i.e., the protection of children. Frost v. Symington, 197 F.3d 348, 357 (9th Cir. 1999); cf. Wirsching v. Colorado, 360 F.3d 1191 (10th Cir. 2004) (upholding prison policy denying visitation with minor daughter for sex offender where prison officials "offered some evidence indicating that contact between sex offenders and children, even their own children, may adversely affect both the child and the offender"). The first Turner factor weighs in favor of upholding former § 3173.1 because there was a rational connection between it and the legitimate government interest in protecting child visitors.

### 2. Alternative Means Of Exercising The Right

The second factor identified by Turner to determine the reasonableness of a restriction "is whether there are alternative means of exercising the right that remain open to the prison inmates." Turner, 482 U.S. at 90. If so, the court should be particularly conscious of the measure of judicial deference owed to corrections officials. Id.

Again, the Overton case guides this court's analysis. There, the Court also found that the

second Turner factor was satisfied because inmates had alternative means of associating with those prohibited from visiting in that they could communicate by telephone and letter, as well as by sending messages through persons who were allowed to visit. Overton, 539 U.S. at 135. Overton specifically noted that "[a]lternatives to visitation need not be ideal, however; they need only be available." Id.

It is undisputed that Valdez was not prohibited by prison officials from communicating with minors by writing letters, talking to them on the telephone, or relaying messages through adult visitors. Although Valdez argues that the mail was too slow and the telephone system was limited and expensive, the fact that they were not ideal does not mean that they did not exist. His argument that his wife would not change telephone providers and therefore did not have telephone contact with him did not mean that a telephone system was not available. And her apparent affinity for her telephone provider that somehow outweighed her desire to talk to Valdez did not mean that she or the children could not use the alternative of letter-writing. The Turner test does not require prison officials to fashion a system that accommodates the personal preferences of visitors and persons who want to communicate with prisoner; otherwise, it would be extraordinarily easy to defeat any visiting restriction, as outsiders declare a repugnance to everything from certain telephone companies and the U.S. Postal Service to search requirements attendant to visiting a prisoner. The existence of these alternative means of associating with minors counsels in favor of upholding the regulation.

### 3. Impact of Accommodating Prisoner's Right

The third factor to be considered in determining the reasonableness of the regulation is "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." Turner, 489 U.S. at 90.

Defendants urge that accommodating an unrestricted right for sex offenders to visit with minors would likely cause a "significant reallocation of the prison system's financial resources and would impair the ability of correctional staff to protect all who are inside the prison's walls."

12

Overton, 539 U.S. at 135. Additional staff would be needed to ensure that the visiting room is safe for minor visitors. The reallocation of staff members to this task would require that they be moved from other parts of the prison which, in turn, would leave other parts of the prison understaffed and more susceptible to security concerns. Defendants argue that this would be particularly undesirable because about 18% of the custody staff positions are currently vacant.

Although Valdez argues that there are lots of correctional officers doing nothing at his prison who could be assigned to guarding the visiting room, his argument is unpersuasive. What may appear to be "doing nothing" to him may actually be watching the prisoners. To the extent there are guards not doing their jobs, he has not provided evidence that the jobs that they should be doing can be abandoned without consequence so that they may be reassigned to the visiting room or diverted from other visiting room-related tasks so that they can protect the minors.

The third factor weighs in favor of upholding the regulation.

### 4. Ready Alternatives

The fourth factor to be considered in determining the reasonableness of the regulation is the existence of ready alternatives: "the absence of ready alternatives is evidence of the reasonableness of a prison regulation . . . [while] the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." Turner, 489 U.S. 90. This is not a "least restrictive alternatives" test. Id.

Valdez identifies three potential alternatives.[3] First, he suggests creating a designated section for all minor visitors directly in front of the podium where the guards are located. Valdez contends that herding all children into a single area is an easy accommodation because there is an area already reserved for visits with minors under 8 years old and the furniture in that area could be moved to accommodate all minor visitors. Defendants respond that the officers do not stand at the podium for the entire visit. Defendants present evidence that "[c]oncentrating

---

[3] He states that he does not advocate non-contact visits as a ready alternative to former § 3173.1. See Plaintiff's Opposition Brief, p. 19 & n.6.

13

1  all minor visitors in one area, and allowing inmates who have been convicted of sexual crimes
2  to minors, such as those affected by § 3173.1, to be in that same area would potentially expose
3  all minor visitors to sexual harm." Talkington Supplemental Decl., ¶ 3. This proposed
4  alternative is not a reasonable solution: although putting all the minors in one part of the room
5  may make observation by correctional staff easier, it does not alter the fact that there are not
6  more than 7 guards for up to 203 people in the room – guards who must be on the watch for
7  more than just sexual misconduct against children. And it is at least counterintuitive to suggest
8  that the solution to the potential danger to minors is to put the sex offenders nearer to even more
9  children.

10  Second, Valdez contends that the prison could require all minor visitors to sit across the
11  table from the inmate they are visiting and, if tables aren't available, to sit about a table-length
12  apart from each other. He contends that this measure, along with parental supervision, would
13  eliminate any chance of abuse and could be implemented without any cost. Defendants disagree,
14  stating that this would punish all inmates and minors by denying all inmates the opportunity to
15  engage in appropriate physical contact, e.g., holding babies to bond with them can be positive
16  for both the inmate and child. Talkington Supplemental Decl., ¶ 4. Valdez appears to agree that
17  this is an undesirable state of affairs. See Valdez Decl., ¶ 19 (docket #94) (inmates on non-
18  contact visiting status "have no way to bond with their children, nor hold them, which is very
19  negative to the inmate and the child.") This proposed alternative does not protect the minors
20  because there remains the problem that the minor visitors would remain within arm's reach of
21  a sex offender, so that enhanced monitoring by correctional staff would still be required. And
22  this proposal has the downside of restricting all inmates from physical contact with minors, and
23  Valdez has not shown that non-sex offenders pose the same risk to minors that sex offenders do.

24  Third, Valdez contends that defendants could add another guard to the visiting room or
25  reassign a guard to "exclusively watch over all minor visitors." Plaintiff's Opposition Brief, p.
26  20. For the reasons stated in the preceding section, adding another guard or reassigning a guard
27  to exclusively watch over all minor visitors is not a ready alternative but instead would cause
28

14

1 increased security concerns elsewhere (if existing correctional staff members are reassigned) or
2 the require the expense of hiring additional staff.

The absence of easy and obvious alternatives to the ban on visits with minors for sex offenders weighs in favor of upholding former § 3173.1.

All four Turner factors favor upholding former § 3173.1. The court concludes that, as a matter of law, Valdez's constitutional rights were not violated by § 3173.1 because it promoted the legitimate governmental goal of protecting children from harm in the visiting room. Defendants did not violate plaintiff's constitutional rights by enacting and applying former § 3173.1 to Valdez. Defendants are entitled to judgment as a matter of law on plaintiff's claim.

C.   The Distinction Among Sex Offenders

One noteworthy part of former § 3173.1 was that it had the odd effect of completely banning visits between a sex offender and a minor who was not the victim of his crime while allowing visits between a sex offender and a minor who was his victim. Former § 3173.1 did not explicitly state this difference in treatment; rather, the difference in treatment resulted from the interplay of the regulation with statutes. Former § 3173.1 provided that "visiting with minors shall be prohibited for any inmate sentenced to prison for [any of several listed sex offenses] unless specifically authorized by a Juvenile Court, pursuant to Welfare and Institutions Code section 362.6." Section 362.6 allowed a juvenile court to hold a hearing to determine whether "visitation between the child victim and the incarcerated person would be in the best interests of the child victim." If visitation with an inmate was determined to be in the best interests of the child victim, the CDCR would be notified, and the juvenile court could "impose whatever safeguards or restrictions it deems appropriate to protect the child victim." Cal. Welf. & Inst. Code § 362.6. Section 362.6 allowed a hearing to be requested pursuant to California Penal Code § 1202.05 but not otherwise. California Penal Code § 1202.05 provided that, whenever a defendant was sentenced for various sex listed sex offenses "and the victim of one or more of those offenses is a child under the age of 18 years, the court shall prohibit all visitation between

15

the defendant and the child victim." That section also allowed certain listed persons to object to the order and request a hearing on the matter under § 362.6. Cal. Penal Code § 1202.05.

Of key importance here is the fact that the § 362.6 juvenile court proceeding only could be used to modify an order of the sentencing court in the inmate's criminal case. Defendants assert, and Valdez does not dispute, that a proceeding under California Welfare & Institutions Code § 362.6 could not be held unless § 1202.05 had been applied in the inmate's criminal case and the proposed minor visitor was the object of the § 1202.05 order. A minor who had never been the subject of a § 1202.05 order had no right to a proceeding under § 362.6. That minor therefore did not have the protection of a juvenile court hearing with the involvement of the Child Protective Services to determine whether it was in his or her best interests to visit the inmate and did not have the benefit of any court-ordered restrictions or safeguards on visitation with the inmate.

While former § 3173.1 at first blush appears to grant a preference to inmates who wanted to visit their minor-victims, it was not a preference made by the CDCR. It was the CDCR's duty under the statutory scheme to permit those visitations, but only after several hurdles had been cleared by the sex offender and minor-visitor who wanted to visit. Insofar as former § 3173.1 distinguished among sex offenders – allowing the possibility of some sex offenders visit their minor-victims while sex offenders could not visit minors they had not victimized – it passes muster under the Turner test. The distinction in § 3173.1 between inmates wanting to visit their minor-victims and those wanting to visit minors they had not victimized thus was rationally related to protecting minors from harm because only minor-victims had the Juvenile Court proceedings to protect them. That satisfied the first Turner factor. The second Turner factor is the same as discussed earlier in this order. As to the third and fourth Turner factors, there is no evidence that the CDCR had the resources or skills to evaluate the best interests of those minors for whom § 362.6 proceedings were unavailable.

Former § 3173.1 drew a distinction among sex offenders. All four Turner factors, however, favor upholding former § 3173.1. As a matter of law, Valdez's constitutional rights

16

were not violated by § 3173.1 because it promoted the legitimate governmental goal of protecting children from harm in the visiting room. Defendants did not violate Valdez's constitutional rights by enacting and applying former § 3173.1 to him. Defendants are entitled to judgment as a matter of law on plaintiff's claim. Because the court has upheld the regulation, it does not need to consider whether Valdez has shown a basis for liability for each of the defendants.

D.     Qualified Immunity

Defendants, insofar as they are sued in their individual capacity, also are entitled to judgment as a matter of law on their defense of qualified immunity because there was no constitutional violation. See Saucier v. Katz, 533 U.S. 194 (2001).

E.     Plaintiff's Cross-Motion For Summary Judgment

In light of the granting of defendants' motion for summary judgment, Valdez's motion for summary judgment is denied. He cannot prevail when defendants are entitled to judgment in their favor.

**CONCLUSION**

For the foregoing reasons, defendants are entitled to judgment as a matter of law on plaintiffs' complaint. Defendants' motion for summary judgment is GRANTED. (Docket # 70.) Plaintiff's cross-motion for summary judgment is DENIED. (Docket # 81.)   Judgment will be entered in favor of defendants and against plaintiff. The clerk shall close the file.

IT IS SO ORDERED.

Dated: June 27, 2007

_____
SUSAN ILLSTON
United States District Judge